**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **GUSTAVO JIMENEZ-GARCIA,** | § | |
| | § | |
| **Movant,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:23-cv-406-O** |
| | § | **(Criminal No. 4:20-cr-274-O(1))** |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Respondent.** | § | |

**OPINION and ORDER DENYING MOTION TO VACATE UNDER 28 U.S.C. § 2255 and
DENYING CERTIFICATE OF APPEALABILITY**

Before the Court is Defendant Gustavo Jiménez-García ("Jiménez-García")'s motion to vacate under 28 U.S.C. § 2255 and supporting brief. ECF Nos. 1, 2. The government filed a response (ECF No. 8) and Jimenez-Garcia filed a reply. ECF No. 9.  After considering the § 2255 motion and brief, the response, reply, and applicable law, the Court **DENIES** Jiménez-García's § 2255 motion.

I.      **BACKGROUND**

A.      **Underlying Facts**

In August and September 2020, a confidential source told DEA agents that Jiménez-García was a methamphetamine distributor and purchased firearms that were sent to Mexico. Presentence Report (PSR) ¶ 9, CR ECF No. 47-1.[1] After Jiménez-García and an unknown coconspirator told the confidential source that they could supply him with methamphetamine, an undercover agent called Jiménez-García and negotiated the purchase of six kilograms of methamphetamine for $8,000. PSR at ¶¶ 10-11.

---

[1] "CR ECF No. __" henceforth refers to documents filed in the underlying criminal proceeding, *United States v. Jiménez-García*, 4:20-CR-00274-O-1 (N.D. Tex.). "ECF No. __" refers to the docket entries in this civil case number 4:23-CV-406-O assigned to the § 2255 motion proceeding.

On the day of the transaction, the undercover agent and Jiménez-García met at the agreed-upon location in Fort Worth. PSR at ¶ 12. While they waited for another individual, José Javier Cardenas-Ramos, to arrive with the six kilograms of methamphetamine, the undercover agent and Jiménez-García discussed the matter of compensation and agreed that Jiménez-García would get $500 per kilogram of methamphetamine. *Id.* Jiménez-García also pulled out his cellular phone and showed the undercover agent photographs he had of weapons, and the two discussed the possibility of another drug transaction, involving two kilograms of cocaine. *Id.*

When Cardona-Ramos arrived, the undercover agent approached the passenger-side of the car where he saw six packages containing 6,853 grams of methamphetamine and a firearm under the dashboard close to Cardona-Ramos's knee. PSR at ¶ 13. DEA agents arrested Jiménez-García and Cardenas-Ramos. *Id.*  In Cardenas-Ramos's cellular phone, agents found the phone numbers for Jiménez-García and the unknown coconspirator. PSR at ¶ 15.

After consenting to an interview, Jiménez-García told agents that he introduced the confidential source to the unknown coconspirator but claimed that he was only at the location of the drug transaction to make sure that it went down "smoothly." PSR at ¶ 16.

**B.    Waiver of Indictment and Guilty Plea**

After DEA agents filed a sealed criminal complaint, a grand jury indicted Jiménez-García with one count of conspiracy to possess with intent to distribute controlled substances, in violation of 21 U.S.C. § 846 (21 U.S.C. § 841(a)(1) & (b)(1)(A)). Crim. Compl., Indictment, CR ECF Nos. 1, 16. About a week later, Jiménez-García was charged in a Superseding Information with conspiracy to possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 846 (21 U.S.C. § 841(a)(1) & (b)(1)(B)). Superseding Information, CR

2

ECF No. 29. Whereas the charge in the Indictment carried a 10-year minimum, the charge in the information carried a five-year minimum. *Compare* 21 U.S.C. § 841 (b)(1)(A) with 21 U.S.C. § 841 (b)(1)(B).

Three days later, after "being advised of the nature of the charges, the proposed Information and of [his] rights," Jiménez-García waived prosecution by Indictment and agreed to proceed under the Superseding Information. Waiver of Indictment, CR ECF No. 32.  Along with the waiver of Indictment, Jiménez-García filed a factual resume with a stipulation of facts and a plea agreement signed by him and his defense attorney. FR, Plea Agreement, CR ECF Nos. 33-34. In the plea agreement, Jiménez-García acknowledged that he had "thoroughly reviewed all legal and factual aspects of this case with his lawyer and is fully satisfied with that lawyer's legal representation" and "received from his lawyer explanations satisfactory to him concerning each paragraph of this plea agreement, each of rights affected by this agreement, and the alternatives available to him other than entering into this agreement." Plea Agreement 4, CR ECF No. 34.

At the rearraignment hearing, Magistrate Judge Cureton went over the process of pleading guilty pursuant to an information with Jiménez-García. Rearraignment Tr. 20-21, CR ECF No. 110. The magistrate judge asked Jiménez-García if he had discussed the matter of waiving his right to indictment with his attorney and whether he "fully understood that right" to which Jiménez-García responded, "Yes, sir." *Id*. at 21. Jiménez-García further confirmed that it was his signature on the waiver of indictment form. *Id*. at 22.

After finding that Jiménez-García's waiver of indictment was knowing and voluntary, the magistrate judge proceeded to go over the charges in the Superseding Information, and Jiménez-García ensured the judge that he understood those charges. *Id.* at 23. Thereafter, the government

recited, and Jiménez-García admitted in open court that he committed all the essential elements of the charged offense. *Id.* at 26-27.

In response to further questioning from the magistrate judge, s Jiménez-García tated that he was "fully satisfied with the representation and legal advice" that he had received from his attorney in this case and confirmed that he entered into the plea agreement voluntarily. *Id.* at 28, 31. Ultimately, the magistrate judge found that Jiménez-García understood the nature of the charges and penalties and entered the guilty plea voluntarily, as supported by a factual basis for the plea. Report and Recommendation 1-2, CR ECF No. 38.  He recommended that the district court accept Jiménez-García's guilty plea. *Id.* at 2. As he did in the rearraignment hearing, the magistrate judge indicated in its recommendation that Jiménez-García had 14 days to object to the magistrate judge's findings and recommendation to the district court. *Id* at 2. Jiménez-García did not file any objection.

### C.    Presentence Report, Objections, and PSR Addenda

The day after the magistrate judge recommended that the court accept the guilty plea, the government moved in favor of Jiménez-García receiving a third point for acceptance of responsibility pursuant to USSG § 3E1.1(b) because he had "assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty." Notice Regarding Acceptance of Responsibility, 1, CR ECF No. 42.

After the guilty plea was accepted by the Court, the Probation Department prepared the presentence report. The PSR began the guideline calculations by assigning Jiménez-García a base offense level of 34 under the drug quantity table in U.S.S.G., § 2D1.1(c)(3) because the offense involved at least five kilograms but less than 15 kilograms of methamphetamine. PSR at

¶ 24, CR ECF No. 47-1. The PSR then applied a two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon based on Cardenas-Ramos carrying a firearm in his vehicle. *Id*. at ¶ 25. After applying a three-level reduction for acceptance of responsibility under both U.S.S.G. § 3E1.1(a) and (b), Jiménez-García's total offense level was 33. *Id*. at ¶ 33. With a criminal history category of I, Jiménez-García faced a guideline range of 135 to 168 months' imprisonment. PSR at ¶¶ 39, 66.

Jiménez-García, through counsel, filed extensive objections to the PSR. Objections 1-7, CR ECF No. 50. Among other things, Jiménez-García objected to the PSR's application of the firearm enhancement, claiming that he "had no knowledge of the firearm and was not aware that Cardenas-Ramos brought the firearm." *Id.* at 2. In fact, he averred that he "was expecting someone else to be there and did not know Cardenas-Ramos was the one coming." *Id.*  In a PSR Addendum, the probation officer provided information, which revealed that Jiménez-García communicated with Cardenas-Ramos via cellular phone to provide directions to the meeting location. PSR Addendum 2, CR ECF No. 56-1.  Moreover, the probation officer maintained that Jiménez-García was involved in joint criminal activity and that a coconspirator's firearm possession in a drug conspiracy was "reasonably foreseeable, especially considering the defendant, himself, was identified as a firearms trafficker." *Id.*

Also in the PSR Addendum, the probation officer made two corrections to the guideline calculations. First, the drug quantity found in the vehicle was actually "5,945 grams of methamphetamine hydrochloride, with a purity of 94 percent, resulting in 5,588 grams (5.5 kilograms) of methamphetamine (actual)." *Id.* at 3. This additional drug quantity increased Jiménez-García's base offense level to 38 and, after applying the firearm enhancement and acceptance of responsibility reduction, resulted in a new total offense level to 37. PSR

5

Addendum at 4 (modifying PSR ¶¶ 24, 29, and 33). The PSR Addendum thus gave Jiménez-García a new guideline range of 210 to 262 months' imprisonment. *Id.* (modifying PSR ¶ 66). Subsequently, the probation officer issued a Second PSR Addendum, noting that Jiménez-García met the safety valve criteria under 18 U.S.C. § 3553(f)(1)-(5) and U.S.S.G. § 5C1.2. Second PSR Addendum 1 (modifying PSR ¶¶ 25a, 29, and 33), CR ECF No. 62-1. Accordingly, the probation officer applied a two-level reduction, which resulted in a final total offense level of 35 and a guideline range of 168 to 210 months' imprisonment. *Id*. at 1-2 (further modifying PSR ¶ 66).

In further objections to the addendum, Jiménez-García, through counsel,  maintained that the firearm enhancement should not apply and that his sentence was "being arbitrarily increased" because use of the "actual" methamphetamine amount (instead of a mixture of methamphetamine) "require[d] the use of the arbitrary 10:1 ratio" and that "the current, purity-driven methamphetamine Guidelines fail to achieve the objectives set forth in 18 U.S.C. § 3553(a) and have caused unwarranted sentencing disparities." Objections to PSR Addendum 3, CR ECF No. 63.

In response to Jiménez-García's continued objection to application of the firearm enhancement, the government relied on circuit precedent establishing that "[t]he adjustment *must* be made when a weapon is found at the scene of the crime *unless* there is a clear improbability that the weapon is connected to the offense." Response to Objections 1, CR ECF No. 34 (quoting *United States v. Flucas*, 99 F.3d 177, 179 (5th Cir. 1996)) (emphasis in original). Moreover, the government argued that a defendant need not have possessed the firearm for the enhancement to apply, so long as a coconspirator possessed a weapon and said possession could have been reasonably foreseeable to the defendant. *Id.*

### D.      Sentencing

At sentencing, the Court overruled Jiménez-García's objection to the firearm enhancement, concluding that "the facts support a finding that this was a jointly undertaken criminal activity" and that Cardenas-Ramos's "possession of the firearm was reasonably foreseeable and it was in furtherance of the conspiracy." Sentencing Tr. 8, CR ECF No. 108. Accordingly, the Court adopted the guideline calculations in the Second PSR Addendum, which resulted in a guideline range of 168 to 210 months' imprisonment based on a total offense level of 35 and a criminal history category of I. *Id.* at 9. After hearing from the parties, the Court sentenced Jiménez-García to the bottom end of the guideline range--168 months' imprisonment based on the 18 U.S.C. § 3553(a) sentencing factors. *Id*. at 11.

### E.      Direct Appeal

On appeal, defense counsel filed an *Anders*[2] brief. While Jiménez-García filed a response raising various claims—i.e., that: (1) his plea was not knowing and voluntary; (2) there was no factual basis to support the plea; and (3) his sentence was procedurally unreasonable because, among other things, the firearm enhancement should not apply—the Fifth Circuit dismissed the appeal. *United States v. Jiménez-García*, No. 21-10333, 2022 WL 1198207, at *1 (5th Cir. 2022). Jiménez-García then filed this timely motion to vacate under 28 U.S.C. § 2255. Mot. Vacate 1-13, ECF No. 1.

## II.    GROUNDS FOR RELIEF

Jiménez-García seeks to set aside his conviction and sentence, averring that: (1) his attorney had rendered ineffective assistance of counsel by failing to explain the consequences of pleading guilty, thereby rendering his guilty plea not knowing and voluntary; (2) there was no

---

[2] *Anders v. California*, 386 U.S. 738 (1967).

factual basis to support a firearm enhancement at sentencing; and (3) the district court lacked jurisdiction in the absence of an indictment. Brief 6-30, ECF No. 2.

## III.    APPLICABLE LAW

### A.    Standard of Review

Under 28 U.S.C. § 2255, a prisoner may move the convicting court to vacate, set aside, or correct his conviction or sentence on four grounds: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is 'otherwise subject to collateral attack.'" 28 U.S.C. § 2255(a); *see United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) (citation omitted).

"It has, of course, long been settled law that an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *United States v. Addonizio*, 442 U.S. 178, 184 (1979). "Section 2255 does not offer recourse to all who suffer trial errors." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. Unit A Sept. 1981). It may also "not do service for an appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982). After conviction and the exhaustion or waiver of all appeals, the Court is "entitled to presume" that the prisoner "stands fairly and finally convicted." *Id.* at 164.

### B.    Law Applicable to Review of Ineffective-Assistance Claims under § 2255

Ineffective-assistance-of-counsel ("IAC") claims can be raised under § 2255. *Massaro v. United States*, 538 U.S. 500, 504 (2003). To establish IAC, "[F]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the

8

defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). This two-part test applies to IAC claims arising from guilty pleas. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

To show deficient conduct under *Strickland*, the burden is on the defendant to show that his counsel's representation fell below an objective standard of reasonableness, by identifying acts or omissions of counsel "that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690. A district court then determines whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* There is a strong presumption that the performance of counsel falls within this range. *United States v. Samuels*, 59 F.3d 526, 529 (5th Cir. 1995). Defendant cannot overcome this presumption with after-the-fact accusations that lack supporting evidence. *See United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993) (noting that although pro se § 2255 motions are construed liberally, even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue"); *Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value."). If counsel provides objectively unreasonable representation during the plea process, the defendant must prove prejudice by showing "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

To prove prejudice generally, a defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. This showing "requires a 'substantial,' not just 'conceivable,' likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011). "Surmounting

*Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). Failure to meet either the deficient-performance or prejudice prongs will defeat a claim of ineffective-assistance. *United States v. Stewart*, 207 F.3d 750, 751 (5th Cir. 2000). The reviewing court need not address both components if there is an insufficient showing on one. *Id.*

## IV.   ANALYSIS

For the reasons explained below, the Court concludes that Jiménez-García's substantive claims that were rejected on appeal (or not raised on appeal) but raised in this § 2255 motion are procedurally barred and/or defaulted. Further, with regard to his ineffective-assistance-of-counsel claim, Jiménez-García has failed to demonstrate either deficient performance or prejudice.

### A.   Substantive Claims are Procedurally Barred/Defaulted and Alternatively Without Merit

#### 1.   Procedural Default

Jiménez-García attempts to raise substantive arguments in his § 2255 motion. Specifically, he argues (1) that his guilty plea was not knowing and voluntary; (2) that the firearm enhancement should not have applied at sentencing; and (3) that the district court lacked jurisdiction because there was no indictment. Brief 6-30, ECF No. 2. These claims are not only non-cognizable but also procedurally barred and/or defaulted. *See, e.g., United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999) ("Section 2255 motions may raise only constitutional errors and other injuries that could not have been raised on direct appeal that will result in a miscarriage of justice if left unaddressed. Misapplications of the Sentencing Guidelines fall into neither category and hence are not cognizable in § 2255 motions") (citations omitted); *see also United States v. Segler*, 37 F.3d 1131, 1134 (5th Cir. 1994) ("A district court's

technical application of the Guidelines does not give rise to a constitutional issue cognizable under § 2255") (citation omitted).

To overcome either of these procedural hurdles, a movant must show "both cause for his procedural default, and actual prejudice resulting from the error." *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991) (en banc) (internal quotation marks omitted); *see also United States v. Kallestad*, 236 F.3d 225, 227 (5th Cir. 2000) (observing that a § 2255 movant who fails to raise a constitutional or jurisdictional issue on direct appeal waives the issue on collateral review unless he shows both cause for his procedural default and actual prejudice resulting from the error). Cause can be shown by demonstrating that matters outside of the movant's control prevented him from raising and discussing the claims on direct appeal. *See United States v. Flores*, 981 F.2d 231 (5th Cir. 1993). To establish prejudice, the movant must show that, but for the alleged error, the outcome of the proceeding would have been different. *Pickney v. Cain*, 337 F.3d 542 (5th Cir. 2003). This standard imposes "a significantly higher hurdle than the plain error standard" governing direct appeals. *Shaid*, 937 F.2d at 232. Courts apply this "rigorous standard in order to ensure that final judgments command respect and that their binding effect does not last only until 'the next in a series of endless postconviction collateral attacks.'" *Id* (citation omitted).

Alternatively, a movant can still overcome a procedural default or bar if he can show that enforcement of the bar would result in a fundamental miscarriage of justice because, "as a factual matter, [] he did not commit the crime of conviction." *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (citing *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995) (citation omitted)). The movant must support his allegations with new, reliable evidence not presented at trial, and must show that it was "more likely than not that no reasonable juror would have convicted him in light

11

of the new evidence." *Fairman*, 188 F.3d at 644 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995) (other citation omitted).

Here, defense counsel on appeal filed an *Anders* brief stating that there were no nonfrivolous claims to be raised. However, Jiménez-García filed a pro se response to the *Anders* brief in which he raised arguments challenging the knowing and voluntary nature of his guilty plea and the applicability of the firearm enhancement at sentencing. *United States v. Jimenez-Garcia*, (Response to Mot. Withdraw) No. 21-10333 (5th Cir. Dec. 20, 2021) (Docket No. 44.) The Fifth Circuit considered these arguments and rejected them. *Jiménez-García*, 2022 WL 1198207, at *1 (dismissing appeal after considering Jiménez-García's arguments in response to defense counsel's *Anders* brief). Hence, to the extent Jiménez-García challenges the knowing and voluntary nature of his plea and the applicability of the firearm enhancement in his § 2255 motion on the same grounds he raised on appeal, these grounds are procedurally barred from review under § 2255. *See United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986). Insofar as he challenges them on different grounds than those urged on appeal, they are procedurally defaulted. *See United States v. Willis*, 273 F.3d 592, 595-96 (5th Cir. 2001).

Furthermore, Jiménez-García has neither shown cause for his failure to pursue arguments on appeal nor established that he would suffer prejudice if these procedural bars were enforced. He merely raises vague and conclusory assertions that are unsupported by the record and contrary to law, and then, without any foundation, contends that he "should be excused from proving cause and prejudice for his procedural default." Brief 6, ECF No. 2. "[M]ere conclusory allegations on a critical issue," however, "are insufficient to raise a constitutional issue in a Section 2255 proceeding." *United States v. Woods*, 870 F.2d 285, 287 (5th Cir. 1989). Likewise, Jiménez-García merely claims innocence, but his assertion is devoid of any support from new,

reliable evidence showing that it was "more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Fairman*, 188 F.3d at 644. Thus, he cannot avail himself of the fundamental miscarriage of justice exception to the procedural bar/default rules. For these reasons, these arguments must be dismissed under the doctrines of procedural bar and/or default.

2.    Substantive Claims Lack Merit

Furthermore, and alternatively, the arguments lack merit. Regarding the knowing and voluntary nature of his guilty plea, Jiménez-García at all times—verbally at his plea hearing and in writing in his plea agreement—said that he was satisfied with his counsel's performance, that he understood the nature of the charges against him, and that he was knowingly and voluntarily pleading guilty. Plea Agreement 4, CR ECF No. 34; Rearraignment Tr. 28, 31, CR ECF No. 110. "Solemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Thus, Jiménez-García's verbal and written representations made at his plea hearing, as well as the findings made by the trial judge accepting the plea, constitute a "formidable barrier to any subsequent collateral proceedings." *Id.*

Meanwhile, his continued challenge to the firearm enhancement finds no support in the law or facts. Circuit precedent makes clear that the enhancement applies when, as here, "a weapon is found at the scene of the crime unless there is a clear improbability that the weapon is connected to the offense." *Flucas*, 99 F.3d at 179 (citations omitted). Although Jiménez-García was not in possession of the firearm, the enhancement still applies because his coconspirator possessed the weapon and said possession was reasonably foreseeable to Jiménez-García given that he was participating in a drug transaction. Indeed, the Fifth Circuit "has long held that a large 'amount of drugs . . . delivered and [high] street value increase the likelihood—and thus

13

foreseeability—that those involved in the conspiracy will have dangerous weapons.'" *United States v. Requejo*, 537 F. App'x 474, 476 (5th Cir. 2013) (quoting *United States v. Cisneros-Gutiérrez*, 517 F.3d 751, 766 (5th Cir. 2008) (other citation omitted)).

Finally, Jiménez-García's contention that the Court lacked jurisdiction because there was no indictment fails to account for the fact that a valid indictment had already been obtained when the government filed a Superseding Information. Under Rule 7(b) of the Federal Rules of Criminal Procedure, "[a]n offense punishable by imprisonment for more than one year may be prosecuted by information if the defendant--in open court and after being advised of the nature of the charge and of the defendant's rights--waives prosecution by indictment." Fed. R. Crim. P. 7(b). Moreover, the Fifth Circuit has recognized that "where [as here], a valid indictment has been obtained, "a defendant's decision to plead to a superseding bill of information includes an implicit waiver of indictment . . . ." *United States v. Gaudet*, 81 F.3d 585, 590 (5th Cir. 1996). Accordingly, Jiménez-García is mistaken in asserting that "when [he] was charged individually by a superseding information, the government conspiracy charge evaporated and became void." Brief 14, ECF No. 2. And finally, Jiménez-García's waiver of indictment was explicit, insofar as he signed a written waiver of indictment and the court inquired about his knowing and voluntary decision to waive prosecution by indictment. Waiver of Indictment 1, CR ECF No. 37; Rearraignment Tr. 22-23, CR ECF No. 110.  Thus, the record shows the proceedings in this case satisfied Rule 7(b) and that the Court had jurisdiction.

### B.    Ineffective Assistance of Counsel Claim

Jiménez-García asserts that defense counsel "stood as a potted plant and allowed [Jiménez-García] to plead guilty to an offense, where [Jiménez-García] had no knowledge or understanding of the elements of the offense" and "failed to impress upon the district court, that it

was committing reversible plain error in accepting Movant's guilty plea . . . because the factual basis was insufficient." Brief 9, 17, ECF No. 2. The ineffective assistance claims are not supported by the record.

        1.   <u>No Deficiency</u>

     As previously mentioned, Jiménez-García told the Court that he was satisfied with his counsel's performance, that he understood the nature of the charges against him, and that he was knowingly and voluntarily pleading guilty. Such "[s]olemn declarations in open court carry a strong presumption of verity," thereby making Jiménez-García's representations made at his plea hearing and elsewhere in the record a "formidable barrier to any subsequent collateral proceedings." *Blackledge*, 431 U.S. at 73-74. Jiménez-García cannot overcome this formidable barrier with nothing more than conclusory and unsupported allegations that his counsel's performance was deficient. *See Woods*, 870 F.2d at 287; *United States v. Opiyo*, No. 4:10-CR-168-A-1, 2013 WL 4804193, at *4 (N.D. Tex. Sept. 6, 2013) ("Movant fails to provide any facts at all that could demonstrate that his attorney's investigation and conduct in the adversarial process were anything other than objectively reasonable. Therefore, movant's conclusory allegation cannot satisfy the *Strickland* standard for ineffective assistance of counsel"). Thus, Jiménez-García has failed to satisfy the first *Strickland* prong. *See Vega v. United States*, No. 3:17-CR-341-B(4), 2023 WL 3484216, at *4 (N.D. Tex. May 1, 2023), *rep. and rec. adopted*, No. 3:17-CR-341-B(4), 2023 WL 3491741 (N.D. Tex. May 16, 2023) ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions") (citing *Strickland*, 466 U.S. at 691).

15

2.     No Prejudice

While failure to show deficient performance is a sufficient ground to deny the ineffective assistance claims, Jiménez-García has also failed to show prejudice. Prejudice exists where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694). In essence, Jiménez-García's contention is that he was prejudiced because defense counsel "arbitrarily and constructively denied him his Fifth and Sixth Amendments Rights respectively and his right to due process." Brief 7, ECF No 2. He also contends that, but for counsel's performance, he would not have pleaded guilty. Brief 9, ECF No. 2. Such conclusory assertions of prejudice, devoid of any facts or evidence, however, are plainly insufficient under *Strickland*. *See Burgess v. United States*, No. 4:19-CR-0362-P(3), 2021 WL 4399758, at *2 (N.D. Tex. Sept. 27, 2021), *cert. of appealability denied*, No. 21-11041, 2022 WL 13592020 (5th Cir. May 3, 2022) ("'The likelihood of a different result must be substantial, not just conceivable,' and a movant must prove that counsel's errors 'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result'") (quoting  *Cullen*, 563 U.S. at 189)). Simply making conclusory allegations of deficient performance and prejudice is not sufficient to meet the *Strickland* test." *Id.* (citing *Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000)). Indeed, the record shows that the Court went over the charges in the Superseding Information with Jiménez-García and ensured that he understood them. Rearraignment Tr. 23, CR ECF No. 110. Jiménez-García also admitted in open court that he committed all the essential elements of the charged offense. *Id.* at 26-27. Thus, Jiménez-García has not shown that any deficient conduct prejudiced him.

In sum, Jiménez-García's ineffective-assistance-of-counsel claim fails both prongs of the *Strickland* standard.

## V.     CERTIFICATE OF APPEALABILITY

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability (COA) is issued under 28 U.S.C. § 2253. Fed. R. App. P. 22 (b). Rule 11 of the Rules Governing Section 2255 Proceedings now requires the Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing Section 2255 Proceedings in the United States District Courts, Rule 11(a) (December 1, 2009). This Court may only issue a COA if "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by showing "that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists of reason could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 326 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

The Court concludes that Gustavo Jiménez-García has not made a showing that reasonable jurists would question this Court's rulings and, accordingly, **DENIES** a certificate of appealability for the reasons stated in this order.

## VI.  CONCLUSION and ORDER

It is therefore **ORDERED** that Gustavo Jiménez-García's motion to vacate under 28 U.S.C. § 2255 (ECF Nos. 1) is **DENIED.** It is further **ORDERED** that a certificate of appealability is **DENIED**.

**SO ORDERED** this **4th day** of **December, 2023**.

Reed O'Connor
**UNITED STATES DISTRICT JUDGE**